**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 26-20860-CIV-CANNON**

**MARIO R. PULIDO GONZALEZ**,

Petitioner,

v.

**WARDEN, KROME NORTH SERVICE PROCESSING CENTER,**

Respondent.
__________________________________/

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** comes before this Court upon *pro se* Petitioner Mario R. Pulido Gonzalez's ("Petitioner") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C § 2241 ("the Petition") [ECF No. 1]. Petitioner, an immigration detainee currently housed at Krome North Service Processing Center in Miami, Florida, challenges his detention pursuant to 8 U.S.C. § 1226(c) [ECF No. 1 pp. 6–7]. Upon review of the Petition, the Response, the Reply, the record, and otherwise being fully apprised in the premises, the Petition [ECF No. 1] is **DENIED**.

**BACKGROUND**

**1. Petitioner's Immigration and Criminal History**

Petitioner is a citizen and native of Chile who entered the United States as a lawful permanent residence in 1994 [ECF No. 10-1 pp. 1–2]. Since his entry, Petitioner has been arrested for driving under the influence, possession of controlled substances, and larceny [ECF No. 10-1 p. 2]. Most recently, Petitioner pled guilty for possession of cocaine on June 21, 2019 [ECF No. 10-1 p. 1; ECF No. 10-2 pp. 1, 4]. The criminal court withheld adjudication of guilt and sentenced him to probation [ECF No. 10-2 pp. 1, 4].

On November 20, 2020, Petitioner was served with a "Notice to Appear" charging him with removability pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) [ECF No. 10-4 pp. 1–4]. He was taken into Immigration and Customs Enforcement ("ICE") custody three days later [ECF No. 10-5 p. 1]. On January 18, 2021, Petitioner was released on his own recognizance [ECF No. 10-6 pp. 1–4].

On July 27, 2022, the Immigration Court sustained Petitioner's charge of removability by clear and convincing evidence and designated Chile as Petitioner's country of removal [ECF No. 10-7 p. 2]. On January 10, 2024, Immigration Judge Rico M. Sogocio denied Petitioner's "application for cancellation of removal" [ECF No. 10-7 p. 12]. Petitioner appealed that order, and that appeal remains pending with a briefing schedule showing deadlines in April 2026 [ECF No. 10-8; ECF No. 10-3 p. 3].

On September 4, 2025, Petitioner was taken into custody pursuant to a "Warrant for Arrest of Alien" [ECF No. 10-9 pp. 1, 3; ECF No. 10-5 p. 1]. On November 21, 2025, Immigration Judge Lourdes Rodriguez de Jongh elected to take "[n]o action" on Petitioner's bond request [ECF No. 10-11 pp. 1–2]. Then, on January 6, 2026, Immigration Judge Christina Martyak denied Petitioner's request for a change in custody status because Petitioner is subject to "mandatory detention" under 8 U.S.C. § 1226(c)(1)(A) and is a "danger to the community and flight risk" [ECF No. 10-12 pp. 1–2].

**2. The Instant Petition**

On February 2, 2026, Petitioner filed the instant Petition in which he challenges the legality of his continued immigration detention [ECF No. 1 pp. 6–8].[1] Ground One is characterized as a claim for "Unlawful Mandatory Detention Based on a Non-Conviction," construed as a statutory

[1] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing," which courts assume occurred "on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (citation omitted).

challenge to his detention under 8 U.S.C. § 1226(c)(1)(A). Ground Two is listed as "Prolonged Detention / Due Process," treated herein as a constitutional claim under the Fifth Amendment with an incorporated request for a bond hearing. Ground Three is labeled "No Danger / No Flight Risk," which the Court construes as related to Ground Two's request for a bond hearing [ECF No. 1 pp. 6–7]. And Ground Four concerns a claim that his continued detention disrupts his psychiatric care, evaluated here as challenging his conditions of confinement. After screening, this Court entered an Order directing Respondent to show cause as to why the Petition should not be granted [ECF No. 8].

Respondent filed a timely Response to this Court's Order, arguing that Petitioner "is subject to mandatory detention" under 8 U.S.C. § 1226(c) pending completion of his removal proceedings and therefore is "not entitled to a bond hearing or to be released" [ECF No. 10 p. 4]. Respondent also argues that any constitutional challenge to the continued detention would fail because there has been no unreasonable delay by the government in pursuing or completing his removal proceedings [ECF No. 10 p. 9]. Finally, Respondent argues in the alternative that Petitioner has not exhausted his administrative remedies [ECF No. 10 pp. 6–10].

Petitioner filed a Reply in which he reiterates his view that his detention violates due process because it has been "prolonged" without "meaningful review" and that he is neither a danger to the community nor a flight risk [ECF No. 11 pp. 2–5]. Petitioner also argues that any failure to exhaust his administrative remedies should be excused because the administrative process was "unavailable" to him, that the information contained in the Response is "factually incorrect," and that Respondent's position is "inconsistent" [ECF No. 11 pp. 3–6].

The matter is ripe for review.

**LEGAL STANDARDS**

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under the savings clause of 28 U.S.C. § 2255(e), a federal detainee may bring a habeas petition under 28 U.S.C. § 2241 if "the remedy by motion" brought under 28 U.S.C. § 2255 "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Therefore, a petition brought under 28 U.S.C. § 2241 is the proper vehicle through which to challenge the legality of a noncitizen's immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). "It is the petitioner's burden to establish his right to habeas relief[,] and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) (citations omitted).

**DISCUSSION**

**1. The Court lacks subject matter jurisdiction over Petitioner's statutory claim challenging his detention**.

"Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). "Federal courts have an obligation to examine *sua sponte* their own jurisdiction over a case, notwithstanding the contentions of the parties." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020) (citations omitted). This is because "subject-matter jurisdiction underlies a court's power to hear a case." *Id*. (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

Title 8, Section 1226(e) limits a court's authority to review "discretionary judgment[s]" made by the Attorney General. *See* 8 U.S.C. § 1226(e). The statute specifically prohibits courts from setting "aside any action or decision by the Attorney General" taken under 8 U.S.C. § 1226

"regarding the detention of any alien or the revocation or denial of bond or parole.'" *Id.* Accordingly, "§ 1226(e) precludes an alien from challeng[ing] a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2019) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)) (quotation marks omitted).

When interpretating the meaning of a statute, a court must begin by examining "the language of the statute itself." *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) (citation omitted). "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* at 254 (citations omitted). Courts cannot "rewrite a statute because they might deem its effects susceptible of improvement." *Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 398 (1984) (citing *TVA v. Hill*, 437 U.S. 153, 194–95 (1978)).

While the United States Supreme Court has recognized that an alien may challenge "the statutory framework" permitting his detention without bail notwithstanding the terms of 8 U.S.C. § 1226(e), *see Demore v. Kim*, 538 U.S. 510, 516–17 (2003), Petitioner does not do so in Ground One. Instead, Petitioner challenges his "mandatory" and "prolonged" immigration detention, specifically disputing the existence of an underlying conviction that would mandate detention in this case under 8 U.S.C. § 1226(c) [ECF No. 1 p. 6]. This is exactly the sort of challenge to the Attorney General's discretionary application of section 1226 over which the Court lacks jurisdiction under the plain terms of § 1226(e). *See Kim*, 538 U.S. at 533–34 (O'Connor, Scalia, and Thomas, JJ., concurring in part and concurring in the judgment) ("[T]he only plausible reading of § 1226(e) is that Congress intended to prohibit federal courts from 'set[ting] aside' the Attorney

General's decision to deem a criminal alien . . . ineligible for release during the limited duration of his or her removal proceedings"). And it is not, by contrast, a challenge to the legislation authorizing his detention without bail. *Kim*, 538 U.S. at 517.

**2. Even if the Court could exercise subject matter jurisdiction over Petitioner's challenge to the Attorney General's discretionary detention determination under section 1226, the record conclusively shows that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)**.

Even if the Court could entertain Petitioner's discretionary judgment regarding his detention, Petitioner's claim fails because the record conclusively establishes that Petitioner was convicted of a qualifying offense mandating detention under 8 U.S.C. § 1226(c)(1)(A).

As stated above, a court conducting a statutory analysis must start with "the language of the statute itself." *DBB, Inc.*, 180 F.3d at 1281. A court is prohibited from rewriting a statute, *see Badaracco*, 464 U.S. at 398, and "must presume that a legislature says in a statute what it means and means in a statute what it says there," *Germain*, 503 U.S. at 253–54. "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* at 254 (citations omitted).

Additionally, "[w]hen a statute includes an explicit definition," a court "must follow that definition, even if it varies from a term's ordinary meaning." *Tanzin v. Tanvir*, 592 U.S. 43, 47 (2020) (quotation marks omitted and citation omitted). A court also cannot "look at one word or term in isolation" when interpreting a statute: instead, it must "look to the entire statutory context." *See Georgia State Conference of the NAACP v. City of LaGrange, Ga.*, 940 F.3d 627, 631 (11th Cir. 2019) (quoting *DBB, Inc.*, 180 F.3d at 1281).

Pursuant to 8 U.S.C. § 1226(c)(1)(A), "[t]he Attorney General *shall* take into custody any alien who" is found inadmissible or deportable for reasons specified under 8 U.S.C. § 1226. *See* 8 U.S.C. § 1226(c)(1) (emphasis added). Section 1226(c)(1)(A) thus *requires* the detention of

certain aliens "by reason of having committed any offense covered in" 8 U.S.C. § 1182(a)(2). 8 U.S.C. § 1226(c)(1)(A). Section 1182(a)(2) goes on to deem "inadmissible" any alien who has been "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of" any state, federal, or foreign law "relating to a controlled substance." 8 U.S.C. § 1182(a)(2)(A)(i). Notably, the INA defines a "conviction" as "a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where" both (1) "a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere" and (2) "the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty." 8 U.S.C. § 1101(a)(48)(A)(i)–(ii). And a "controlled substance" is statutorily defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of" Title 21, Chapter 13, Subchapter I. 21 U.S.C. § 802(6).

Applying this mandatory language here, Petitioner is clearly subject to mandatory detention under 8 U.S.C. § 1226(c). The record is undisputed that Petitioner pled guilty to one count of possession of cocaine on June 21, 2019, for which he was sentenced to probation [ECF No. 10-2 pp. 1, 4]. The record is also undisputed that cocaine is a listed, qualifying controlled substance under 8 U.S.C. § 1182(a)(2)(A)(i), *see* 21 U.S.C. § 812, which makes Petitioner's prior conviction one "relating to a controlled substance," 8 U.S.C. § 1182(a)(2)(A)(i). While it is true that Petitioner's adjudication of guilt was "stayed and withheld" [ECF No. 10-2 p. 1], the plain terms of the INA consider such an adjudication to be a "conviction" because (1) Petitioner entered a plea of guilty and (2) the court ordered a form of punishment in the form of probation, the nature of which Petitioner does not challenge [*see* ECF No. 10-2 pp. 1–2]. *See also* 8 U.S.C. § 1101(a)(48)(A)(i)–(ii); *Resendiz-Alcaraz v. U.S. Atty. Gen.*, 383 F.3d 1262, 1268 (11th Cir. 2004) (treating a guilty plea with probation penalty as conviction under 8 U.S.C. § 1101(a)(48)(A)). For these reasons, all driven by the clear terms of the INA, Petitioner's

detention is mandatory under 8 U.S.C. § 1226(c)(1)(A). *See also Zazueta v. Barr*, 916 F.3d 708, 711 (8th Cir. 2019) ("'[E]ven in cases where adjudication is deferred the original finding or confession of guilt is sufficient to establish a conviction for purposes of the immigration laws.'") (quoting *Mendoza-Saenz v. Sessions*, 861 F.3d 720, 723 (8th Cir. 2017)); *id.* (concluding that deferred judgment and probation qualifies as a "conviction" under 8 U.S.C. § 1101); *Gonzalez v. O'Connell*, 355 F.3d 1010, 1020 (7th Cir. 2004) (recognizing that "a probationary disposition . . . following a plea of guilty qualifies as a 'conviction' under" 8 U.S.C. § 1101(a)(48)(A) (citing *Gill v. Ashcroft*, 355 F.3d 574, 579 (7th Cir. 2003))).

**3. Plaintiff's Due Process challenge to his continued detention also fails on the merits**.

Petitioner's constitutional challenge to the length of his detention also fails. First, it is questionable whether an alien detained prior to a final order of removal pursuant to a mandatory detention provision can maintain a due process challenge to his continued detention. *See Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), *pet. for writ of cert. granted sub nom*, *Genalo v. Black*, --- S. Ct. ---, 2026 WL 1718025 (U.S. Jun 15, 2026) (granting certiorari to review the Second Circuit's decision upholding the district court's order holding that the Due Process Clause required that an alien subject to mandatory detention under 8 U.S.C. § 1226(c) be afforded a bond hearing). While "the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citation omitted), the Supreme Court in *Kim* and *Jennings* strongly suggested that no such constitutional challenge could lie when an alien's detention has "'a definite termination point,'" that being the conclusion of removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 304–06 (2018) (holding that "§ 1226(c) mandates detention of any alien falling within its scope" and noting that such "detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes"); *see also Kim*, 538 U.S. at 529. That is the case here in light of Petitioner's detention under § 1226(c).

In any event, even assuming there was room to advance a due process challenge in the context of detention prior to entry of a final removal order, nothing in this record warrants a finding of a due process violation. Petitioner was detained approximately five months at the time of filing, which by itself is consistent with the Supreme Court's recognition in *Kim* that, on average, detention lasts "above five months in the minority of cases in which the alien chooses to appeal." *See Kim*, 538 U.S. at 530–31 (holding that the respondent alien's six-month detention was constitutionally permissible); *see also Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1215–17 (11th Cir. 2016) (*Sopo I*) ("[T]here is little chance that a criminal alien's detention is unreasonable until at least the six-month mark"), *vacated on other grounds in Sopo v. U.S. Att'y Gen.*, 890 F.3d 952 (11th Cir. 2018) (*Sopo II*). Beyond that fact, there is no unreasonable or dilatory delay on the part of Respondent, *see Kim*, 538 U.S. at 532–33 (Kennedy, J., concurring); *Sopo I*, 825 F.3d at 1218; no dispute that Petitioner's removal is, at minimum, "possible" once his removability has been finalized, *See Sopo I*, 825 F.3d at 1218; *Thamotar v. U.S. Att'y Gen.*, 1 F.4th 958, 967 (11th Cir. 2021) ("A removal order is 'final' when the BIA affirms an Immigration Judge's order of removal or when the time to appeal an Immigration Judge's decision has expired, whichever is earlier" (citing 8 U.S.C. § 1101(a)(47)(B)); and no dispute that Petitioner's continued detention furthers non-punitive interests, *See Sopo I*, 825 F.3d at 1218; *see also Kim*, 538 U.S. at 531. The Court finds support in this assessment from the Eleventh Circuit's decision in *Sopo I*, which, although vacated on other grounds, continues to provide persuasive guidance on the applicable factors to consider when an alien challenges his mandatory detention pursuant to 8 U.S.C. § 1226(c). *See Sopo I*, 825 F.3d at 1217–18 (considering the following factors in analyzing an alien's due process challenge to his § 1226(c) detention: (1) "the amount of time that the criminal alien has been in detention without a bond hearing;" (2) "why the removal proceedings have become protracted;" (3) "whether it will be possible to remove the criminal alien after there is a final order of removal;"

(4) "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable;" and (5) "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention"); *see also, e.g.*, *Oscar v. Ripe*, 751 F. Supp. 3d 1324, 1330–31 (S.D. Fla. 2024) (Middlebrooks, J.) ("[D]istrict courts in this Circuit . . . continue to look to *Sopo I*'s multi-factor analysis to determine whether prolonged detention under § 1226(c) does, in fact, violate an alien's right to procedural due process") (collecting cases).

In sum, it is unlikely that Petitioner, an alien whose detention is mandatory under § 1226(c), can present a viable due process challenge to his continued detention, as he attempts to do here. But even if such a claim were cognizable, the record fails to show that Petitioner's detention has reached an unconstitutional length. Further, the record fails to show any unreasonable delay on the part of Respondent, any question about the possibility of Petitioner's removal, or any question that Petitioner's continued detention serves non-punitive interests. Therefore, on this record, Petitioner fails to raise a viable due process challenge to his mandatory detention under 8 U.S.C. § 1226(c).

**4. Petitioner's Remaining Claim of Medical Necessity Challenges the Conditions of His Confinement and is Not Cognizable in a Habeas Petition**.

Petitioner's final claim in Ground Four alleges that his psychiatric care has been disrupted by his immigration detention [ECF No. 1 p. 7]. However, such claims cannot be raised in a Petition for Writ of Habeas Corpus. Instead, since Petitioner is a federal detainee, this claim must be brought in a civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

An immigration detainee is permitted to seek federal relief through two primary avenues: a petition for writ of habeas corpus or a civil rights complaint. *See Hutcherson v. Riley*, 468 F.3d

750, 754 (11th Cir. 2006) (quoting *Hill v. McDonough*, 547 U.S. 573, 579 (2006)). These avenues for relief are "mutually exclusive." *See Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 865 (11th Cir. 2017). In other words, "if a claim can be raised in a federal habeas petition, that same claim cannot be raised in a separate . . . civil rights action." *Hutcherson*, 468 F.3d at 754 (citing *Nelson v. Campbell*, 541 U.S. 637, 643 (2004)).

The line between a civil rights action and a habeas claim "is based on the effect of the claim" on Petitioner's detention. *Hutcherson*, 468 F.3d at 754. When an immigration detainee challenges the "circumstances of his confinement," the claim should be raised as "a civil rights action." *Id.* (quoting *Hill*, 547 U.S. at 579). Alternatively, when a detainee challenges "the validity of" or "lawfulness of" his confinement, or the "particulars affecting its duration," "his claim falls solely within 'the province of habeas corpus.'" *Hutcherson*, 468 F.3d at 754 (citing *Hill*, 547 U.S. at 579); *see also Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . requests for relief turning on circumstances of confinement may be presented in a [civil rights] action." (internal citation omitted)).

Petitioner's remaining claim, liberally construed as alleging deliberate indifference to his serious medical needs, challenges the *circumstances* of Petitioner's confinement, *not* the confinement itself or its length. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) ("Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as . . . the protection he is afforded against other inmates"). Since habeas petitions and civil rights complaints are "mutually exclusive" avenues for relief, *see Boyd*, 856 F.3d at 865, Petitioner cannot raise claims implicating the conditions of his confinement in a habeas petition. Therefore, if Petitioner seeks to raise these claims, he must do so in a separate civil rights lawsuit.

**CERTIFICATE OF APPEALABILITY**

Rule 11(a) of the Rules Governing § 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.[2] A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* Rule 11(b), Rules Governing § 2254 Cases in the United States District Courts.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected [a] constitutional claim[] on the merits," a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Alternatively, when a "district court denies a habeas petition on procedural grounds," a Certificate of Appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether" both "the petition states a valid claim of the denial of a constitutional right" and "the district court was correct in its procedural ruling." *Id*.

First, the Court rejected Petitioner's constitutional claims on the merits. Therefore, to be entitled to a Certificate of Appealability, he "must demonstrate that reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. However, reasonable jurists would not come to such a conclusion. Second, the Court

[2] A court is afforded the discretion to apply the Rules Governing Section 2254 Cases to Petitions filed under 8 U.S.C. § 2241. *See* Rule 1(b), Rules Governing Section 2254 Cases in the United States District Courts.

rejected Petitioner's medical needs claim on procedural grounds. Therefore, to be entitled to a Certificate of Appealability, he must show "that jurists of reason would find it debatable whether" both that "the petition states a valid claim of the denial of a constitutional right" and "the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. However, Petitioner cannot demonstrate that reasonable jurists would find it debatable whether this Court "was correct in its procedural ruling." *Id.* Therefore, a Certificate of Appealability is **DENIED**.

**CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The Petition [ECF No. 1] is **DENIED**.
2. A Certificate of Appealability is **DENIED**.
3. All pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.
4. The Clerk is instructed to mail a copy of this Order to Petitioner at the address listed below and file a Notice of Compliance on the docket.
5. **The Clerk is directed to CLOSE this case**.

**ORDERED** in Chambers in Fort Pierce, Florida, this 1st day of September 2026.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: **counsel of record**

**Mario R. Pulido Gonzalez, *pro se***
A# 042754155
Krome North Service Processing Center
Inmate Mail/Parcels
18201 S.W. 12th Street
Miami, Florida 33194